Argued January 25, affirmed February 19, reconsideration denied March 27, petition for review denied June 18, 1974

# STATE OF OREGON, *Respondent, v.* RILEY RITCHIE GARDNER (Nos. 14-920, 14-921), *Appellant.*

518 P2d 1341

*Phillip M. Margolin,* Portland, argued the cause for appellant. With him on the briefs was Alfred M. Varnes, Portland.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

TANZER, J.

Defendant was indicted for murder, ORS 163.115-(1)(b), and assault in the first degree, ORS 163.185, along with several other participants in a tavern fight which resulted in a death and several injuries. After an extensive trial, defendant was convicted of murder and three counts of assault in the second degree, ORS 163.175, and he appeals on the basis of several assignments of error.

First, defendant assigns as error the denial by the trial court of his motion for new trial and motion in arrest of judgment which raised for the first time constitutional challenges to the murder statute, ORS 163.115 (1)(b), and the first degree assault statute, ORS 163.185, as void for vagueness. An objection to the constitutionality of a statute upon which an indictment is based must be raised by pre-trial demurrer and, if not, it is waived. *State v. Zusman*, 1 Or App 268, 271, 460 P2d 872 (1969), *rev den, cert den* 398 US 905, 90 S Ct 1698, 26 L Ed 2d 65 (1970); *State v. Krause*, 251 Or 318, 323, 445 P2d 500 (1968). Defendant's claim that such an assertion is reviewable if first raised on a motion for new trial and motion in arrest of judgment, ORS 136.810, is incorrect. *State v. Thomson*, 203 Or 1, 16, 278 P2d 142 (1954). Consequently, we do not reach the issue.

The trial court allowed over defendant's objection testimony by the manager of the tavern where the fight occurred, that about one month before the fatal fight defendant had had a dispute at the tavern

with one Lester Tompkins, a brother-in-law of Derial "Cash" McCaw, the decedent:

> "A Well, in questioning him [the defendant] to find out what was wrong, he said that Lester Tompkins had bumped into him in the can and made some statement. I said, 'Well, surely that isn't worth having a big hassle over' and he said, 'Well, that s.o.b. is still alive.' And something to that nature and I said, 'Well, I don't—
>
> "* * * * *
>
> "A * * * He [defendant] said, 'That son of a bitch is still alive and he pushed me in the can.'
>
> "I said, 'Well, I don't think it is worth a man's life for him pushing you.'
>
> "* * * * *
>
> "A Okay, Lester Tompkins started to get in his car and there was three or four people trying to keep everything down to earth, and Ritchie Gardner was kind of half turned to me and I said, 'Come on, man, let's just let it go, because the guy is leaving and he has his wife and kids in the car.' I said, 'You don't want to hassle him in front of his wife and kids.'
>
> "And he said, 'I will show him a hassle. I will kill that son of a bitch.' And he turned around and pointed at Cash McCaw who was standing in the doorway and he said, 'And that stubby fucker there, too.' "①

Defendant assigns admission of the evidence of death threats as error because

> "* * * evidence of a month old death threat to the deceased, which would bear on elements such as 'intent' or 'premeditation', is irrelevant when the

---

① The trial court refused a prosecution offer of proof that the defendant had on other occasions made statements which evidenced an approving attitude toward violence, which statements were unconnected in time or person to the offense charged.

crime charged is 'reckless' murder, because 'intent' and 'premeditation' are not elements of the crime of 'reckless' murder."

The murder count on the indictment is brought in the statutory language of ORS 163.115 (1)(b) which provides that "criminal homicide constitutes murder when * * * [i]t is committed recklessly under circumstances manifesting extreme indifference to the value of human life," rather than ORS 163.115 (1)(a) which applies when criminal homicide "is committed intentionally." "Recklessly," as used in the indictment, is defined by ORS 161.085 (9) as follows:

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

■ Proof that the defendant articulated an intention to kill the decedent and his brother-in-law in response to slight provocation must therefore be measured for relevancy against the allegation of the indictment that defendant's conduct manifested "extreme indifference to the value of human life." The threats demonstrate defendant's attitude toward human life, particularly McCaw's, in that they tend to show that he had either determined to kill McCaw or, at the least, would "consciously disregard a substantial and unjustifiable risk" that his stabbing would cause McCaw's death. Thus it was relevant on the question of defendant's state of mind and was properly admitted.

The defendant's next assignments of error chal-

lenge the admission of rebuttal evidence to impeach his testimony and that of his friend, co-defendant and witness, Steven Zabriskie. Zabriskie testified on direct examination as to the day's activities with the defendant from the time he woke up until after the fight in the evening, but he omitted any mention of an encounter with the police which occurred on their way home from an afternoon tour of some taverns. The prosecutor asked him about the encounter on cross-examination. Zabriskie testified that the police harassed members of his motorcycle club without provocation, that on that afternoon the police had pulled them over, but that there had been no "particular hassle," and that he, Zabriskie, had not yelled "profanities and obscenities" at the officer before he pulled them over.

The defendant also testified on direct examination about the day's activities, including the police encounter. He denied that there had been any rough language or contentiousness. On cross-examination, however, he admitted the use of coarse name calling and said that the officer challenged him, defendant, to a fight.

The prosecutor called the police officer in rebuttal. He testified over objection, among other things, that Zabriskie had directed coarse names and gestures toward him and that the defendant repeatedly challenged him to a fight, bragged about his boxing experience, and expressed his desire to see the officer's blood and disfigurement.

The trial judge, by proper instruction, limited the jury's consideration of the officer's testimony to rebuttal purposes.

Defendant assigns the admission of the rebuttal testimony as error, urging that it is improper as im-

peachment on a collateral matter. *State v. Edwards,* 106 Or 58, 210 P 1079 (1922). The state responds that the evidence was properly admitted to show that Zabriskie's and defendant's testimony of the day's activities was incomplete due to defect of memory or lack of candor.

■■■■ ORS 45.600 provides that a "witness may be impeached by the party against whom he was called, by contradictory evidence * * *." As a general rule, however, such impeachment may not relate to collateral matters. Stated otherwise, a cross-examiner must accept the answers he receives to questions "not relevant to the issue and not touched on indirect examination." *Smith v. White,* 231 Or 425, 433, 372 P2d 483 (1962). In many cases, this one included, it is hard to draw the line of relevancy. One of the principal purposes of the rule being the expedition of trial, its application is largely left within the trial court's discretion. *Flande v. Brazel,* 236 Or 156, 160, 386 P2d 920 (1963). In this case, the impeachment testimony was properly admitted because it was opened up in the defendant's direct testimony, *State v. Segura,* 16 Or App 373, 519 P2d 100, *rev den* (1974), and because the trial court, in the proper exercise of its discretion, did not allow the trial of one event to become the trial of another event.

Defendant complains of the manner in which the prosecutor sought to impeach him by proof of a former conviction pursuant to ORS 45.600. The defendant admitted on direct examination to having been convicted of "Misdemeanor of malicious mischief." He argues that under *State v. Rollo,* 221 Or 428, 351 P2d 422 (1960), the prosecutor was barred from introducing any further evidence. Here, the prosecutor was allowed to establish on cross-examination that the name

of the crime was "criminal mischief in the second degree" and that the crime and the conviction occurred in 1972. When the prosecutor began to ask regarding the facts of the case, his question was promptly interrupted by an objection and the court properly limited the inquiry.[2]

---

[2]

"Q [Mr. Keutzer:] Mr. Gardner, you indicated that you were convicted of malicious mischief?

"A I believe it was.

"Q Would that be the same as criminal mischief in the second degree?

"A I don't know. I don't know the laws of the State of Oregon, sir.

"Q Was that in July 11 of 1972 that that happened?

"A That I was convicted of it?

"Q No, that the criminal act that you were convicted of occurred, if it did.

"A I didn't know it was a criminal act but I believe it was around that date.

"Q You didn't know it was a criminal act when you did it?

"MR. VARNES: Your Honor, I object to any further inquery [sic] into this conviction. It has been brought up that he has a conviction and that closes the matter.

"THE COURT: Overruled.

"Q Go ahead. You didn't know it was a crimnal [sic] act?

"A I didn't know it was a—that it was written out on your paper there—I don't know—

"Q Well, didn't you plead guilty to intentionally damaging a car by—

"MR. VARNES: Your Honor, I am going to object to the facts of this case being brought in. The man has been decieved [sic]. There was no definition of the crime and—

"THE COURT: For this purpose the prosecutor is allowed to bring out, one, the crime, when and where.

"MR. KEUTZER: It is the State's position that since it was brought out on direct that it was brought out not for impeachment—obviously he is not impeaching his own witness—but for asserting the truth of it, which opens it up for cross examination.

"MR. VARNES: I did it merely for background, Your Honor.

"THE COURT: You could have objected to that and didn't

Defendant relies upon the following language in *State v. Rollo*, 221 Or at 437:

"\* \* \* It is proper to ask a witness if he has ever been convicted of a crime. This may be done with or without a record of conviction being available. If the witness answers 'No,' that is the end of the interrogation. If an authenticated record to refute the negative answer is available it may be introduced to show an actual previous conviction of crime by the witness. Or, the record may be introduced in the first instance, without a preliminary question to the witness, to show previous convictions. That, however, is the limit permissible by our procedure. \* \* \*"

He also cites *State v. Gilbert*, 138 Or 291, 294, 4 P2d 923 (1931), which holds that the district attorney may

"\* \* \* ask the defendant if he has ever been convicted of a crime. If the defendant answers in the affirmative, that is the end of the matter so far as the state is concerned. The defendant may, if he wishes, explain what the crime was, or, if this is not done, the prosecuting attorney may introduce the record of the judgment showing that the defendant has been convicted. \* \* \*"[9]

■■ The literal language of these cases would seem unreasonably restrictive. Absent surprise, a party may

---

so you are permitted in cross examination to bring out the crime, when, and where.

"Q Do you recall when this occurred, the conviction?
"A No, not the conviction. I pled guilty to the charge.

"Q And was that in 1972?
"A Yes, I believe it was."

[9] Defendant also relies upon *Mannix v. Portland Telegram*, 144 Or 172, 23 P2d 138, 90 ALR 55 (1933), but the rationale and holding in that case are internally inconsistent and it is best limited to its facts. Cf. *State v. Akles*, 9 Or App 501, 497 P2d 1207 (1972).

not impeach his own witness by asking on direct examination about prior convictions. *State v. Hamilton,* 4 Or App 214, 476 P2d 207, *rev den* (1971); *State v. Miller,* 1 Or App 460, 460 P2d 874, *rev den* (1970). Where the proponent breaches that rule, mischief often follows. Direct testimony of prior convictions would seem to authorize cross-examination to the same extent as any other direct testimony would. Further, if *Rollo* is read literally, if the evidence is oral, then only the fact of conviction may be proved, but if the evidence is documentary, then the number, place and names of the crimes of the convictions may be shown. There is no sound reason, however, to believe that the Supreme Court intended by *Rollo* to hold that a party who may prove facts by documents may not prove them also or instead by questions and answers. The facts are equally relevant whatever form or forms of competent evidence are employed to prove them, although the admission of cumulative evidence would be within the discretion of the trial judge as is any other. *See State v. Akles,* 9 Or App 501, 504, 497 P2d 1207 (1972). A literal reading of *Rollo* also indicates that the witness who admits to having once been convicted of a crime precludes any further inquiry, but one party should not be able to bar the other from impeaching adverse witnesses. *Rollo* dealt with an overzealous prosecutor. The result was language which exceeded the facts by far but which has never been modified or withdrawn. It has occasionally been skirted where good sense demanded, *cf. State v. Ponton,* 240 Or 30, 32-33, 399 P2d 30, *cert den* 382 US 1014 (1966), and should be applied in light of the facts upon which the holding is based.

■ In this case, regardless of whether the allowance of the questions as to the name of the crime and the

year of the crime and conviction was error under *Rollo,* we cannot see that the defendant was prejudiced by exposing the jury to that information.

We have fully considered the defendant's other assignments of error. We are satisfied that they are incorrect, but that discussion of them will not benefit the bench or bar in subsequent cases.

Affirmed.