Argued and submitted October 15, 1986, affirmed July 8, 1987

# STATE OF OREGON
*Respondent,*

*v.*

# LEONARD WEBB SMITH,
*Appellant.*

## (M199373; CA A39742)

739 P2d 577

Donald P. Roach, Portland, argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for driving while his operator's license was suspended. *Former* ORS 487.560. His sole claim of error is that the court improperly allowed the state to present rebuttal evidence.

Defendant was charged on September 25, 1985. That day he had attended a hearing in Portland regarding his workers' compensation claim. The arresting officer was present at the hearing and knew that defendant's operator's license was suspended at that time. He testified that he left the hearing at the same time as defendant and shortly thereafter saw him drive a vehicle later identified as belonging to him. The officer gave him a citation for the offense the next day. Defendant admitted that his license was suspended but denied driving a vehicle on September 25. He testified that he took a bus from his home in Hillsboro to the hearing. The sole issue at trial was whether defendant was driving a vehicle on September 25, 1985.

The officer would testify that he had seen defendant drive the same vehicle on September 26, 1985. Before trial, defendant moved to exclude any evidence of that. The court granted the motion but later allowed the same evidence to be presented in rebuttal to defense witnesses' testimony.

Defendant called his son, who lives with him, as a witness. The son testified that on September 25 he saw his father take the bus. He testified that he recalled that day, because his father had to attend a workers' compensation hearing and it was a very important matter. He testified on direct examination that he knew that his father's license was suspended. Defendant's attorney asked: "Where was [your father's] car parked that day?" The son responded: "On the side of our house." The attorney then asked: "Did you ever see your dad drive while he was suspended." He replied: "Nope." He testified that he did not see his father return home that day, because he was attending a school function.

The prosecutor cross-examined the witness regarding whether he actually saw his father take the bus and tested his memory regarding seeing his father's car parked at the side of the house. On cross-examination, the witness testified:

"Q. When did you see the car parked by the side of the house there?

"* * * * *

"A. When I left for school.

"* * * * *

"Q. So you left for school at 7:50 and you're saying that [defendant's car] was on the side there. When was the next time you saw [defendant's car]?

"A. When I came home."

After asking the witness whether he saw his father actually board the bus, the prosecutor then inquired:

"Q. Was your father's car parked at the side of the house today?

"A. Uh huh.

"Q. Was it parked at the side of the house a week ago?

"A. Uh huh.

"Q. Do you remember that specifically?

"A. Uh huh.

"Q. You do?

"A. It hasn't moved.

"Q. It hasn't moved since when?

"A. Since the time of the thing.

"* * * * *

"Q. The time of what thing?

"A. The ticket. Suspension thing.

"Q. If that suspension ticket was August 7, you're saying you know for a fact that the car hasn't moved since August 7. Right?

"* * * * *

"[Defendant's attorney]: I object on the grounds that he's asking a question not in evidence. We're not talking about August 7th, we're talking about September 25th.

"* * * * *

"[Prosecutor]: Your honor, he's testified to his knowledge about this particular day that that car hadn't moved. I'm

testing his veracity on that point of noticing his car there on that particular day versus when he noticed it moving last."

The objection was sustained, and the prosecutor rephrased the question:

"Are you saying that you haven't—you know for a fact— that that car didn't move since September 25th and for a period of time before that?"

The witness' response is inaudible on the tape, but defendant states in his brief that he responded in the affirmative. The state requested permission for the officer to testify on rebuttal that he saw defendant drive his vehicle on September 26. The court allowed the testimony, over defendant's objection, on the basis that the testimony of defendant's son had opened the door to the contradicting evidence. The officer testified, without elaboration, that he had seen defendant driving the car on the 26th.

Defendant appears to argue that the evidence that he drove his car on September 26 is evidence of "other crimes" and not admissible under OEC 404(3), unless it fits one of the specific exceptions enumerated in that rule. He argues that it is not relevant to the only issue in the case, whether he was driving his vehicle on September 25. Alternatively, he argues that the state may not impeach a witness on a collateral matter brought out by cross-examination.

The jury was aware that defendant's license had been suspended on August 7, 1985, and was still suspended on September 25, 1985; consequently, evidence that he drove a vehicle on September 26 might be understood as evidence of another crime. In *State v. Johns,* 301 Or 535, 725 P2d 312 (1986), the court said:

"In sum, OEC 404(3) forbids 'prior crime' evidence only when the evidence is offered solely to prove (1) the character of a person, and (2) that the person acted in conformity therewith. Both elements are required." 301 Or at 548.

As the court indicated in *Johns,* the evidence must be relevant to prove some fact in the case other than the fact of defendant's character and that he acted in accordance with that character.

Defendant argues that whether he drove his car or any car on September 26 is irrelevant, because he is charged

with a driving offense on September 25. The rebuttal was proffered not to establish that defendant drove a vehicle on September 26, but to contradict the testimony of defendant and his son that his car had not been moved for a period of time before September 25 and after that date. It was relevant to the believability of the witnesses' testimony; it contradicted a statement of fact made by both witnesses. Impeachment by contradiction is an available trial tactic to discredit a witness' testimony in general, as well as to cast doubt on the validity of the factual statement made. *See State v. Burdge,* 295 Or 1, 664 P2d 1076 (1983); *State v. Schober,* 67 Or App 385, 678 P2d 746 (1984). The evidence was relevant for some purpose other than to prove the character of defendant and that he acted in conformance with certain characteristics. It was not prohibited by OEC 404(3).

■        Defendant argues that, even if the rebuttal evidence was not received in violation of OEC 404(3), it nevertheless was improper as impeachment, because

> "it is well settled that a witness can not be cross-examined as to any fact that is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, in order thereby to discredit his testimony * * *." *Williams v. Culver,* 39 Or 337, 341, 64 P 763 (1901).

Although this ancient rule has current vitality, *State v. Miller,* 35 Or App 207, 582 P2d 1378 (1978), it requires some elaboration for proper application. The rule generally relates to cross-examination and consequent rebuttal of matters brought up on cross-examination. The principal purposes are to expedite trial and to prevent the rebuttal from becoming a second trial within the main litigation. *State v. Gardner,* 16 Or App 464, 518 P2d 1341, *rev den, cert den* 419 US 998 (1974). It also serves to prevent the party against whom the witness is offered from "smuggling" in an opportunity, not otherwise available, to offer evidence or to impeach a witness by setting the stage on cross-examination. *See State v. Jackson,* 31 Or App 645, 571 P2d 523, *rev den* 281 Or 323 (1978). If the cross-examination relates to matters or issues raised in the direct examination, it is not only appropriate cross-examination, but the answers to the question elicited on cross-examination may be rebutted. A witness' oath to tell the truth applies equally to direct and cross-examination. As we indicated in *State v. Gardner, supra,* the line between irrelevant collateral matter

and what is appropriate for cross-examination and rebuttal is not always clear. The trial court is given considerable discretion in determining what is proper cross-examination and whether rebuttal of a statement on cross-examination will be allowed. This entails an appreciation of the substance and effect of the direct examination and whether rebuttal evidence will unnecessarily prolong the trial or cloud the principal issues.

In *United States v. Havens,* 446 US 620, 100 S Ct 1912, 64 L Ed 2d 559 (1980), the Supreme Court addressed the admissibility of evidence to rebut an answer given on cross-examination. The Court posed the question

> "whether evidence suppressed as the fruit of an unlawful search and seizure may nevertheless be used to impeach a defendant's false trial testimony, given in response to proper cross-examination, where the evidence does not squarely contradict the defendant's testimony on direct examination." 446 US at 621.

Although the case appeared at first blush to involve questions of constitutional dimension, the actual analysis proved to be more mundane.

The Court noted that *Oregon v. Hass,* 420 US 714, 95 S Ct 1215, 43 L Ed 2d 570 (1975); *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971); and *Walder v. United States,* 347 US 62, 74 S Ct 354, 98 L Ed 503 (1954), allow the use of illegally obtained evidence to impeach a defendant's direct testimony. The rationale of those cases, the Court noted, was that a defendant who testifies must do so truthfully or accept the consequences, including the admission of otherwise constitutionally excluded evidence as impeachment. The Court said:

> "We * * * hold that a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." 446 US at 627-28.

The Court saw no difference between statements on direct and cross-examination respecting the propriety of impeaching the testimony by contradictory evidence. The appropriate

inquiry is whether the questions on cross-examination grew out of the direct examination and were reasonably suggested by it.

■      In this case, the impeachment was principally of defendant's son; however, the contradicting evidence was potentially as damaging to defendant directly as it was indirectly in diluting the credibility of his witness. The same analysis suggested by *United States v. Havens, supra,* is appropriate. Defendant's son testified on direct that defendant's car was parked beside the house on the date of the charge and that he had not seen defendant drive while he was suspended. The thrust of his testimony was that he specifically recalled that his father took the bus that day and that the car was beside the house when he left for school and when he returned.

It certainly was within the scope of cross-examination to test the testimony for defect of memory or lack of candor respecting when the car was located by the house. Also, the witness had testified on direct examination that he had not seen his father drive since his license had been suspended. The purpose of his testimony was to leave the impression that defendant did not drive at all during his suspension and that his car was left parked beside the house during the time he was suspended and, consequently, that the officer was mistaken when he said that he saw defendant drive his vehicle on September 25.

The cross-examination was in response to the direct testimony and was not used as a means of "smuggling" in an opportunity to introduce otherwise inadmissible and damaging evidence. The court did not abuse its discretion in concluding that the witnesses' direct testimony opened the door to the questions on cross-examination which led to the rebuttal evidence.

Defendant also argues that, if the evidence is relevant and not excluded by OEC 404(3), its probative value is outweighed by its tendency to confuse the jury and to lead them to an improperly based conclusion that because defendant drove on September 26, he must have driven the day before. This argument invokes the analysis of OEC 403. In *State v. Johns,* the court suggests an extensive analysis that a trial court must pursue in making the determination under OEC 403. The

record does not disclose that the trial court in this case specifically or systematically followed the *Johns* process. The parties had argued, in conjunction with defendant's pretrial motion to exclude the evidence, whether it was other crimes evidence and whether it was unduly prejudicial. The court was aware of those arguments when the state offered and defendant objected to the rebuttal evidence. Although the court did not expressly analyze the evidence pursuant to OEC 403, it implicitly applied the analysis in its ruling. The relevant factors are not disputed in the record and we conclude that the court did not abuse its discretion.

■ The sole issue in the case was whether defendant was driving a vehicle on September 25. The officer testified that he was, and defendant and his son testified that he was not. Credibility was the paramount issue, and cross-examination and impeachment of the three witnesses was a critical part of the case. Evidence establishing that a witness has lied on the witness stand is an important part of a case when the credibility of witnesses is the key issue. *See* ORS 10.095(3). There was a need for the rebuttal evidence, and the first factor identified in *Johns* is satisfied.

The second element in the *Johns* analysis is whether the evidence would show that defendant was involved in the incident disclosed in the rebuttal. The evidence offered was clear that his vehicle was the one being moved and that he was the driver.

The third element involves the strength of the evidence to establish what it is offered to establish. It was offered to establish that the witness was lying. It was a direct contradiction and strong evidence of a lack of credibility.

The fourth factor is the balance between the probative value and prejudice. Prejudicial evidence in this context has a limited meaning; it must be evidence that will tempt a jury to decide the case on an improper basis. Defendant argues on appeal that the jury would be led by the evidence not to resolve the credibility question but simply to say that defendant was driving on September 26, so he must have been driving the previous day. There is, of course, always that possibility when evidence of other crimes is admitted, but the possibility alone is not sufficient to deny admissibility. It is merely a factor in the weighing process. Here, the evidence

was clearly relevant to a critical issue in the case. The "other crime" was not an aggravating or inflamatory circumstance. The relevance of the evidence outweighed any possible prejudice to defendant.

The last factor identified in *Johns* is whether the rebuttal would tend to prolong the trial or to distract the jury from its principal task. The trial was not prolonged; the rebuttal witness was readily available; and his testimony consumed only a few minutes. There was nothing particularly complex or confusing about the evidence that would distract the jury.

Affirmed.