Argued and submitted July 28, 1986, resubmitted In Banc October 7, 1987, affirmed March 9, reconsideration denied May 6, petition for review allowed May 24, 1988

(305 Or 671)

STATE OF OREGON,
· *Respondent,*

*v.*

JEFFREY CURTIS AFFELD,
*Appellant.*

(CR 85-77; CA A38006)

751 P2d 229

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Nancy Diamond, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Philip Schradle, Assistant Attorney General, Salem.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction for robbery in the second degree. His only assignment is that the trial court erred by not granting his motion for mistrial. The issue is whether the court impermissibly limited defendant's cross-examination of co-defendant Newton. We affirm.

The incident which precipitated the charge occurred when defendant and co-defendant Newton encountered Ortiz, the robbery victim, as he walked along the railroad track leading from Odell, Oregon. The victim is Hispanic, he does not speak or understand English and he testified through an interpreter. He stated that he was walking along the railroad tracks toward Odell to do his laundry, which he was carrying in a small bag. He saw defendant and Newton approaching from Odell; they were both carrying rifles and stopped in front of him. They both pointed their guns at his stomach and said "give me your money," and he took his wallet from his pocket and threw it on the ground. He stated that one of the men picked it up and, when he started to leave, defendant signalled him to leave the laundry bag. He dropped it, went a short distance, turned and saw both men leave with his wallet and the laundry bag. He identified defendant as one of the men and testified that defendant pointed a gun at him. Ortiz later found the laundry bag near the railroad track but did not find the wallet. He identified defendant from a photo lineup shown to him by a police officer, and he positively identified defendant in court.

Defendant testified in his own behalf, and his testimony fairly disclosed this narrative. He and Newton were working on a farm near Odell tearing down a barn. On the day the robbery occurred, the two men did some target practice with two rifles in the morning. Defendant shot all of the ammunition that he had with him. Later in the day, after they had quit work, they took both rifles and walked into Odell. As they were returning, walking on the railroad track, they saw Ortiz. Defendant walked past, and Newton stopped in front of Ortiz. Defendant, who was about three or four feet away, heard Ortiz say something in Spanish, which he did not understand. Newton said something to Ortiz, which defendant did not hear clearly, because he is deaf in one ear. He testified that his rifle was hung on his shoulder by the shoulder strap with

the muzzle pointing straight up and that Newton was carrying his rifle at his side with the muzzle pointing forward and down. Defendant said that his gun was empty and that he did not know if Newton's gun was loaded.

He testified that it appeared that Newton and Ortiz were about to fight. Ortiz then threw defendant his wallet and defendant threw it back. Ortiz put the wallet in his pocket and, after Ortiz and Newton exchanged more words, threw the wallet down at defendant's feet, dropped the laundry bag and ran. Defendant stated that he picked up the wallet, Newton picked up the laundry bag and they ran the other way, because they were afraid that Ortiz would return with "more Mexicans." He stated that he went through the wallet and that Newton went through the laundry bag and took a box of soap. He testified that they spent the money that was in the wallet.

Newton had been convicted of robbery in the first degree in a separate trial arising out of the same incident, but had not been sentenced at the time of defendant's trial. The state called Newton as a witness in its case in chief and, when he was questioned outside the presence of the jury, he invoked his privilege against self-incrimination in response to all questions relating to the robbery and did not testify. After defendant had rested and the state had presented one rebuttal witness, the court recessed the trial for that day. The following morning the state informed the court it wished to call Newton as a rebuttal witness for the limited purpose of asking him three questions regarding whether there were bullets in defendant's gun as the men walked along the railroad away from Odell. Defendant's counsel agreed that the prosecutor was surprised by Newton's decision to testify and that there was no prosecutorial misconduct or collusion involved in Newton's decision. Newton's counsel appeared with him and, during the subsequent offer of proof, said that Newton had decided to give limited testimony contrary to his advice and that it was his opinion that Newton could incriminate himself by his responses.

Newton testified in an offer of proof that he and defendant walked into Odell on the railroad tracks and that they both had rifles which they shot on their way into town and that the rifles had bullets in them on the way back from Odell. During the offer of proof, defendant's counsel cross-

examined extensively regarding Newton's testimony about there being bullets in the guns. She then asked if Ortiz had tried to take a swing at him. Newton refused to answer saying: "I respectfully take the Fifth." There followed an extended colloquy between court and counsel, which also involved Newton's attorney. The discussion concerned whether Newton had a right not to incriminate himself at that juncture and whether, if the court ordered him to testify, that would be tantamount to a grant of immunity that could effect any possible retrial of Newton. The court ordered Newton to answer the question.[1] Defendant's counsel then asked how far she could go on her cross-examination, and the court invited an exploratory question. She asked:

> "What I would like from you, Mr. Newton, is a statement of what happened on the transaction when you met Mr. Ortiz?"

In response to the state's objection, the court ruled:

> "That is too far. I am not concerned about his Fifth Amendment privilege, I am concerned about keeping it within the scope of rebuttal or reasonably within the scope of rebuttal or the scope of the direct examination."

Before Newton's testimony in front of the jury, the court, at defendant's request, told the jury that Newton was a codefendant and was unavailable to either side during their respective cases in chief. The court then instructed:

> "Mr. Newton is available to address only limited issues at this time and you should draw no conclusions from the limited nature of those issues or from his unavailability to either side at an earlier stage of the trial."

On direct examination, Newton testified about the agreement regarding sentencing and to what he had testified during the offer of proof, *i.e.,* that there were bullets in the rifles on the way back from Odell. He additionally testified that defendant's rifle had a thirty-shot clip.

Defendant's counsel cross-examined him regarding

---

[1] Defendant's counsel rephrased the question after the court's ruling:

"Q. At a prior hearing, didn't you testify that Mr. Ortiz, in your encounter with Mr. Ortiz, that he first tried to take a swing at you?

"A. Yes, that is correct."

his knowledge of guns and his motive for testifying, but did not ask any questions about the confrontation with Ortiz. Defendant moved for mistrial and explained:

"The reason for that motion is I feel that the defendant is being substantially prejudiced by being unable to confront Mr. Newton and bring in testimony that would be helpful to his case. I am not alleging at this point that the prosecutor kept this witness away from me, but it is gratuitous for him that this witness has not been available for any of my case so I can bring out anything that can substantiate my client's case and the only things that are going to be able to come in are things that are going to substantiate the prosecutor's case. I understand Mr. Newton's Fifth Amendment concerns and I am hemmed in so I cannot represent my client; he does not have a right to confront this witness."

The motion was denied. Defendant testified on surrebuttal and reiterated that he had shot all of the ammunition he had with him earlier in the day. He also testified that he had only a fifteen shot clip for the gun and identified the gun in evidence as his with the fifteen round clip.

After deliberating for a period of time, the jury sent the following question to the court:

"The jury needs clarification on whether or not the gun or guns were loaded, and the point which determines the difference between Robbery One and Robbery Two."

The court reinstructed on those two crimes and defined the term "deadly weapon." The presiding juror said, orally:

"There was a misunderstanding in the group. * * * It's simply whether a weapon, a gun specifically, is a deadly weapon when it's unloaded."

The court responded that the jury would just have to be satisfied with the instructions given.

Although defendant had been charged with robbery in the first degree, ORS 164.415, the jury found him guilty of robbery in the second degree, ORS 164.405, a lesser included offense. The distinction between those two charges is that, in first degree robbery, the state must prove that defendant was armed with a deadly weapon, while in second degree robbery it must prove that defendant represented by word or conduct that he was armed with what purported to be a deadly weapon. In the contemplation of the prosecutor, defense counsel and

the court, that distinction boiled down to the question of whether or not defendant's gun was loaded at the time when he and Newton confronted the victim.[2] It is clear from the record that a principal issue at trial was not whether defendant was involved but whether he was guilty of first or second degree robbery.

On appeal, defendant makes essentially two arguments in support of his motion for mistrial: first, that Newton should not have been allowed to testify at all, because he had earlier asserted his right not to testify and incriminate himself; and second, that, by limiting defendant's cross-examination of Newton, the court violated his rights to confrontation and a fair trial.[3]

■ Defendant's first contention is unpersuasive. A witness who invokes the privilege against self-incrimination exercises a constitutional right that is personal. Neither the defendant nor the state may control the witness' exercise of the right. *State v. Abbott*, 275 Or 611, 552 P2d 238 (1976); *State v. Johnson*, 243 Or 532, 413 P2d 383 (1966). After invoking the privilege, a witness may withdraw the claim as to all or any part of his testimony. Newton was free to waive the right in whole or in part and to testify in rebuttal for the prosecution.

■ Defendant's second contention is that he was denied effective confrontation of the witness, because cross-examination was limited. OEC 611(2) provides:

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The Court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

That rule of evidence reposes discretion in the trial court, both as to whether the question on cross-examination relates to the subject matter of the direct examination and whether the cross-examiner should be allowed a broader range of inquiry.

---

[2] The court instructed the jury:

"The term 'deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

[3] Defendant did not specify which constitution he was invoking—state or federal.

The court exercised its discretion in both respects in this case, and our inquiry is whether it abused its discretion.

The subject matter of the direct examination was very limited: it related only to whether defendant's gun was loaded as the two men walked back from Odell. That limited testimony was offered to rebut directly defendant's statement that his gun was not loaded. Defendant argues that Newton's statement that the guns were loaded on the way back from Odell opened up cross-examination as to what occurred as the two men walked along the tracks, more particularly, what had occurred when they confronted Ortiz. The question asked by defendant's counsel on cross-examination, which provoked the court's ruling, had some relationship to what Newton had testified to on direct examination, but that does not make the cross-examination appropriate as a matter of law or make the ruling an abuse of discretion. The court was well aware that a central issue in the case was whether defendant's gun was loaded and thus whether he would be guilty of first or second degree robbery.

In addition to the relationship between the question on cross-examination and the subject matter of the direct testimony, the court may take other factors into consideration in ruling under OEC 611(2).

Another factor is whether the inquiry will unduly prolong the trial or interject issues that are not germane to the trial at the juncture of the proceeding. It is clear from the record that defendant was interested in bringing out additional testimony from Newton about the actual robbery that might have been favorable. The question asked and not allowed raised questions of Newton's right to assert a privilege not to incriminate himself. His attorney was present during the offer of proof when Newton, on the attorney's advice, asserted a Fifth Amendment privilege not to answer questions relating to the actual confrontation. The court ordered him to answer one question but was aware that his attorney would advise him to assert the privilege in response to questions directed at his participation in the robbery. The court was faced with thorny questions as to whether Newton had waived his Fifth Amendment rights and whether ordering him to testify would immunize him from retrial, if his conviction were

set aside or were reversed on appeal. The court properly considered those problems in determining if the inquiry on cross-examination should be limited.

The court also considered another factor: whether defendant had a reasonable opportunity to test the witness' motive for testifying, his memory, his perception and his credibility, which is the principal purpose of cross-examination. Defendant's counsel examined Newton thoroughly regarding those factors as they related to his direct testimony. Proof of counsel's effectiveness is that the jury, by its questions and verdict, obviously rejected Newton's testimony. Defendant was not deprived of rights of confrontation in terms of full cross-examination. *See Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974). The restriction imposed by the court's ruling only prevented defendant from making Newton his own witness, which the court could allow or deny in its discretion. OEC 611(2). Defendant's confrontation rights were not eclipsed by the court's ruling.

■     Even if the limitation on cross-examination was error in the abstract, as the dissent suggests, it does not follow, as a matter of course, that denial of a mistrial was error or reversible error. A trial court has broad discretion in ruling on a motion for mistrial, the granting of which results in aborting the trial and a possible retrial. In *State v. McFarland,* 30 Or App 93, 566 P2d 539, *rev den* 280 Or 397 (1977), we said:

> "The trial court's discretion, however, is not without bounds, and a motion for mistrial should be granted when it is apparent that some aspect of the conduct of the trial has interfered with a defendant's ability to obtain a fair adjudication of the facts." 30 Or App at 97.

In essence, the inquiry is whether a mistrial is necessary for defendant ultimately to get a fair trial. The same type of inquiry is appropriate in deciding if there was reversible error in the trial and whether defendant must have a new trial in order to have a fair adjudication. In the light of the evidence presented, and the principal issue, *i.e.,* whether defendant's gun was loaded, it is highly unlikely that cross-examination of Newton as defendant proposed would have altered the outcome. Defendant received a fair adjudication of the issues of his guilt, and the trial court did not err in denying his motion for mistrial.

Affirmed.

**NEWMAN, J.,** dissenting.

The trial court improperly limited defendant's right to cross-examine Newton and also violated defendant's rights of confrontation under Article I, section 11, and the Sixth Amendment. Defendant's motion for a mistrial was based on the court's action in limiting cross-examination. The court committed reversible error when it denied defendant's motion for a mistrial.

Defendant was charged with robbery in the first degree. ORS 164.415.[1] The jury found him guilty of the lesser included offense of robbery in the second degree. ORS 164.405.[2] Contrary, however, to the suggestions in the majority opinion, the "principal issue" here was *not* merely whether defendant was guilty of robbery in the first degree or robbery in the second degree, or "whether defendant's gun was

---

[1] ORS 164.415 provides:

"(1) A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a) Is armed with a deadly weapon; or

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person.

"(2) Robbery in the first degree is a Class A felony."

[2] ORS 164.405 provides:

"(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another preson actually present.

"(2) Robbery in the second degree is a Class B felony."

ORS 164.395 provides:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft.

"(2) Robbery in the third degree is a Class C felony."

loaded." 90 Or App at 34.[3] Defendant pleaded not guilty. He denied that, in the taking of Ortiz' wallet, he had used or threatened the immediate use of physical force or that he represented by word or conduct that he was armed with a dangerous or deadly weapon. His testimony, if believed, could support the conclusion that he committed theft, but not robbery in the first or second degree. The court charged the jury on the elements of robbery in the first degree, robbery in the second degree and also on the lesser included offense of theft in the second degree.[4] The verdict form gave the jury the choice of finding defendant guilty of robbery in the first degree, robbery in the second degree, theft in the second degree or not guilty.

In his defense, defendant testified that Newton and he had been target shooting that day, but that his gun was not loaded when they met Ortiz and was hung on his shoulder by the shoulder strap with the muzzle pointing straight up. He denied that he had participated in the robbery and testified that he did not know exactly what had occurred between Ortiz and Newton, because Ortiz said something in Spanish which defendant did not understand and also because he was three or four feet away and is deaf in one ear. He testified that Ortiz threw his wallet to him and he threw it back, that Ortiz and Newton exchanged more words, that Ortiz then threw the

---

[3] The majority at times recognizes that the issues here are more complex. It states, 90 Or App at 34, that *"the* principal issue" was whether defendant's gun was loaded. (Emphasis supplied.) At 90 Or App at 33, it states, however, that *"a* central issue" was whether defendant's gun was loaded and, thus, whether he would be guilty of first or second degree robbery. (Emphasis supplied.) At 90 Or App at 32, it states that *"a* principal issue at trial was not whether defendant was involved but whether he was guilty of first or second degree robbery." (Emphasis supplied.)

[4] ORS 164.045 provides:

"(1) A person commits the crime of theft in the second degree if, by other than extortion, the person:

"(a) Commits theft as defined in ORS 164.015; and

"(b) The total value of the property in a single or aggregate transaction is under $200.

"(2) Theft in the second degree is a Class A misdemeanor."

ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof."

wallet at defendant's feet and ran away, and that defendant then picked up the wallet and Newton grabbed the laundry bag and they both ran away. Defendant testified that he went through the wallet and that he and Newton spent the money that was in it. He denied that he intended that Ortiz give the wallet to him, that he had pointed a gun at Ortiz, or that he had gestured at Ortiz with his gun or otherwise threatened him.

Newton's testimony for the state on rebuttal directly contradicted defendant's testimony. Newton testified that he and defendant were walking along the railroad tracks on the way to Odell on June 29, 1985, carrying loaded rifles, that both had shot their rifles on the way into Odell and that the rifles were still loaded when they walked back. The jury could reasonably infer, therefore, on the basis also of what it had already heard from Ortiz and defendant, that Newton's direct testimony on rebuttal covered a time period that included the time of the robbery and that both rifles were loaded at the time of the robbery.

When defendant's attorney asked Newton on cross-examination during the offer of proof, out of the presence of the jury, for "a statement of what happened on the transaction when you met Mr. Ortiz," the prosecutor objected "because it's outside the scope of direct."[5] The court sustained the objection. The court did not believe that the cross-examination was "reasonably within the scope of rebuttal or the scope of direct examination."[6] Defendant promptly moved for a mistrial. The court asked counsel to renew the motion later "in some general terms so that the jury will not recognize what is going on in the presence of the jury" and to "remind me" that the motion is pending. At the close of testimony before the jury, defendant's counsel reminded the court, as it had suggested, of the pending motion, and the court denied it.

The court plainly erred when it limited defendant's right to cross-examine. Defendant's question to Newton of

---

[5] The question was asked on cross-examination during the offer of proof in chambers, but not during cross-examination before the jury. Under the circumstances, however, that was not inappropriate.

[6] Just before defendant's counsel's question which the court did not permit, defendant's counsel asked Newton on cross-examination if Ortiz had tried to take a swing at him when he first encountered him. The court allowed the question.

"what happened on [sic] the transaction when you met Mr. Ortiz," was well within the "subject matter of the direct examination." OEC 611(2).[7] The questions that the state had asked Newton in his direct examination related to the encounter with Ortiz and the actual robbery incident. Newton had testified on direct to matters that included the time of the robbery and were directly related to it: both defendant and Newton had carried loaded rifles along the railroad track to and from the robbery site on the track. That would permit the jury to infer that both Newton and defendant had carried loaded rifles at the time of the robbery. The majority concedes that "the question asked by defendant's counsel on cross-examination * * * had some relationship to what Newton had testified to on direct examination." 90 Or App at 33. Counsel's question on cross-examination about the meeting with Ortiz, therefore, grew out of the direct examination and was reasonably suggested by it. *See State v. Smith,* 86 Or App 239, 246, 739 P2d 577 (1987). It was germane and not collateral to what Newton testified to on direct.

Moreover, when, as here, a key witness for the state claims the privilege against self-incrimination in the state's case-in-chief, and the state then presents his testimony only on rebuttal, a court should be particularly sensitive, in determining what is within the scope of the direct testimony, to a defendant's need effectively to cross-examine. The majority argues that the court had to take into consideration that Newton's attorney "would advise him to assert the privilege in response to question directed at his participation in the robbery." 90 Or App at 33. It asserts that the court was faced with "the thorny question * * * whether ordering [Newton] to testify would immunize him from retrial if his conviction were set aside or reversed on appeal." 90 Or App at 33. Those are not sufficient bases for barring the cross-examination. The state called Newton. His testimony that the state elicited on direct covered a time period that included the robbery. The trial court abused its discretion in ruling that defendant's questions were outside the scope of the direct examination.

---

[7] OEC 611(2) provides:

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

The court also violated defendant's right to confrontation under Article I, section 11, and the Sixth Amendment. Neither party offers an argument for interpreting the state provision, as it applies here, differently from the Sixth Amendment, and the Supreme Court has used Sixth Amendment cases in its interpretation in Article I, section 11. *See State v. Campbell,* 299 Or 633, 648, 705 P2d 694 (1985); *see also State v. LeClair,* 83 Or App 121, 128, 730 P2d 609 (1986), *rev den* 303 Or 74 (1987). If too great a restriction is placed on cross-examination, a defendant's rights of confrontation may be infringed. *See Alford v. United States,* 282 US 687, 51 S Ct 218, 75 L Ed 624 (1931); *United States v. Mayer,* 556 F2d 245, 250 (5th Cir 1977). Although trial judges, in the face of the Confrontation Clause, may impose reasonable limits on cross-examination based on a concern over "interrogation that is * * * only marginally relevant," *Delaware v. Van Arsdall,* 475 US 673, 679, 106 S Ct 1431, 89 L Ed 674, 683 (1986), the matters to which Newton testified, and about which defendant's counsel wished to examine him, were not "marginally relevant." They were at the heart of the state's case. Moreover, contrary to the majority's statement that defendant's confrontation rights "were not eclipsed by the court's ruling," 90 Or App at 34, the Confrontation Clause gives a defendant, not merely a right to test the witness' perception, memory and credibility, but also a right effectively to cross-examine him on matters not collateral to the direct testimony. *See Davis v. Alaska,* 415 US 308, 315, 94 S Ct 1105, 39 L Ed 2d 347 (1974); *State v. Herrera,* 286 Or 349, 353, 594 P2d 823 (1979); *see also United States v. Newman,* 490 F2d 139, 145 (3rd Cir 1974); *United States v. Cardillo,* 316 F2d 606, 611 (2nd Cir 1963). Defendant had the right on cross-examination to test not only the perception, memory and credibility of Newton in the abstract, but his perception, memory and credibility of the events that were most important: what happened at the robbery scene.

Moreover, the issues under OEC 611(2)and the Confrontation Clauses are interrelated. As I have stated, when, as here, a key witness for the state claims the right against self-incrimination in the state's case in chief, and the state presents his testimony only on rebuttal, a court should be particularly sensitive, in determining what is within the scope of direct testimony, to a defendant's need effectively to cross-

examine. Indeed, the Confrontation Clause "tips the scales" in favor of permitting cross-examination if it could reasonably be expected to have an effect on the jury. *Hughes v. Raines,* 641 F2d 790, 792 (9th Cir 1981).

Accordingly, the court should have granted defendant's motion for a mistrial. In *State v. Stanley,* 30 Or App 33, 36, 566 P2d 193, *rev den* (1977), we noted that "[p]rejudice, as it may flow from the denial of * * * a mistrial, means a reasonable possibility that the judge or jury will be influenced in the performance of the fact-finding function by the irregular event." Here, there was clearly a reasonable possibility that the jury would be influenced by defendant's inability fully to cross-examine and confront Newton. Contrary to what the majority would have us believe, and as I have emphasized, the controversy was *not* simply whether defendant was guilty of robbery in the first degree or robbery in the second degree or whether his gun was loaded. It also concerned whether, alternatively, he was guilty of theft in the second degree or not guilty. Newton's testimony about what happened at the time of the robbery undermined defendant's assertion that he was not guilty or, at least, not guilty of robbery. The court's ruling barred him from cross-examining Newton regarding critical events. It prejudiced him.[8] As we stated in *State v. McFarland,* 30 Or App 93, 97, 566 P2d 539 (1977):

"The trial court's discretion * * * is not without bounds, and a motion for a mistrial should be granted when it is apparent that some aspect of the conduct of the trial has interfered with a defendant's ability to obtain a fair adjudication of the facts."

I dissent.

Joseph, C. J., and Buttler and Warden, JJ., join in this dissent.

---

[8] Defendant's attorney told the court that, "I am hemmed in so I cannot represent my client."