Submitted February 25, affirmed October 29, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CASEY JONATHAN STAPP,
*Defendant-Appellant.*

Marion County Circuit Court
11C51403; A151287

338 P3d 772

Peter Gartlan, Chief Defender, and Mary M. Reese, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Andrew M. Lavin, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant was convicted of one count of first-degree assault, ORS 163.185.[1] Defendant and the victim, Johnson, had been drinking together. After Johnson put defendant in a headlock and punched him in the head several times, defendant retrieved a knife from his backpack and repeatedly stabbed Johnson. Defendant asserted that he had acted in self-defense. During the jury trial, defendant testified that he had never stabbed anyone before. The state successfully argued that defendant's testimony could be impeached on cross-examination through questioning about a prior, unrelated incident, in which defendant had threatened a bicyclist with a knife. On appeal, defendant argues that the trial court erred by allowing that evidence, and that the error requires a reversal of his conviction for first-degree assault. We conclude that the trial court erred in admitting the evidence because the prior incident was not relevant to impeach defendant's testimony that he had never stabbed anyone before. However, we also conclude that the error was harmless. Accordingly, we affirm.

The facts relevant to our disposition are undisputed. Defendant, Johnson, and a third man were together at Johnson's apartment one night. Defendant and Johnson were drinking beer, playing music, and playing a game with a cue ball. At some point, Johnson placed defendant in a headlock and punched him on top of the head a couple of times. After Johnson released defendant, defendant retrieved a knife from his backpack and stabbed Johnson in the neck. Defendant proceeded to stab Johnson seven more times, including in the back of his legs. Defendant testified at trial that he was in fear of his life because, during the course of the night, Johnson had periodically become angry and hit defendant and had refused to let defendant leave. Defendant testified that he had preexisting spinal conditions that made him fearful that being hit again could cause paralysis or death.

---

[1] ORS 163.185(1)(a) provides that "[a] person commits the crime of assault in the first degree if the person *** [i]ntentionally causes serious physical injury to another by means of a deadly or dangerous weapon."

During the prosecutor's cross-examination of defendant, the following exchange occurred:

"[Defendant]: * * * I'm going, what did I do, I'm sitting there freaking out. I don't know, you never been in—

"[Prosecutor]: I've never stabbed someone, no.

"[Defendant]: Yeah. Okay.

"[Prosecutor]: So I don't know what that's like.

"[Defendant]: Well, I never have either, but—

"[Prosecutor]: I'm sorry, what? You never have either?

"[Defendant]: No."

At that point, the prosecutor argued that defendant's testimony that he had never stabbed anyone before opened the door to questioning defendant about an incident "involving the defendant taking a swipe with the knife at a bicyclist[.]" Defense counsel argued that the incident did not rebut defendant's statement and that defendant's testimony did not show that he had a particular character trait that the incident could be admissible to rebut. The trial court allowed the prosecutor to ask limited questions about the incident with the bicyclist, stating:

"I think it opens the door for the next question, which is, isn't it true that you've tried to stab people before, and we'll see what he answers.

"* * * * *

"I think it goes to whether or not the State has a reasonable expectation of the truthfulness of the matter that they're asking about in cross, so I'm going to allow it and I'm going to stop it though at, isn't it true that you've taken a swipe at other people with a knife. I'm going to let it stop there, depending on what the defendant says."

The following exchange on cross-examination then occurred:

"[Prosecutor]: [Defendant], you said that you had never stabbed anyone before. Have you ever swung at anyone with a knife before?

"[Defendant]: Yes, I have.

"[Prosecutor]: And when was that?

"[Defendant]: I don't recall, but I know I've done it before but I don't think I swiped, I just threatened.

"[Prosecutor]: You threatened someone else with a knife before.

"[Defendant]: Yeah. I didn't swipe. He was looking through the cars by the theater where I live. I can watch right out my window and he wouldn't leave and he was looking in the cars on his bicycle, and I said, get out, and he said, f you or whatever, and so I came out with it and then I went back in because he said he was going to call the police. So I went back in the house and just said, the police will come, you know, that's it.

"[Prosecutor]: You said the police came?

"[Defendant]: I think so. I don't really remember because I—but I didn't—it wasn't, you know—it didn't have anything to do with—it was protecting other people's property because I don't even drive."

Evidence of prior, uncharged misconduct, such as the incident between defendant and the bicyclist, "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(3). Such evidence of prior acts may, however, "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Evidence of prior, uncharged misconduct also may be used to impeach the credibility of the defendant's testimony. *State v. Manrique*, 271 Or 201, 213, 531 P2d 239 (1975); *see also State v. Smith*, 86 Or App 239, 244, 739 P2d 577 (1987) (evidence of "other crimes" of the defendant that contradicts a statement of fact made by a witness may be used to impeach the witness's credibility).

On appeal, defendant asserts that the trial court erred in allowing the state to question him about the incident with the bicyclist because that evidence did not contradict his statement that he had never stabbed anyone before. As a result, defendant argues, the evidence was not proper impeachment and was relevant only as a means to infer that defendant has a violent temper, which is an impermissible basis for admission.

The state responds that the evidence was admissible for impeachment, because defendant had tried to persuade the jury in his opening statement that Johnson was a violent person and that defendant was not violent and only carried a knife for protection. In that context, the state urges, "defendant's unsolicited testimony that he had never stabbed anyone in the past created an inaccurate perception," and, thus, the state was entitled to impeach defendant with the prior incident to rebut a misleading inference. The state argues that the impeachment evidence did not have to directly contradict defendant's testimony "in a literal sense" to be admissible.

We review the admission of evidence for errors of law. *State v. Grey*, 175 Or App 235, 245, 28 P3d 1195 (2001), *rev den*, 333 Or 463 (2002). To be admissible, the evidence of defendant's incident with the bicyclist had to be "independently relevant for a noncharacter purpose." *Id.* at 248 (internal quotation marks omitted). Here, the state contends that the evidence was admissible for impeachment purposes and so was independently relevant for a noncharacter purpose. However, we conclude that the testimony concerning defendant's wielding of a knife when he confronted a bicyclist looking into cars outside defendant's home was not proper impeachment of defendant's testimony.

Although a party may impeach a witness by contradicting the witness's testimony, *see State v. Gibson*, 338 Or 560, 572-73, 113 P3d 423, *cert den*, 546 US 1044 (2005) (discussing impeachment by contradiction), defendant testified during cross-examination that he had never *stabbed* anyone before. Defendant did not testify that he had never wielded a knife before. Indeed, he admitted that he knew how to handle a knife and how to protect himself with it. Evidence that defendant had, in a prior incident, threatened someone with a knife was not relevant to discredit his testimony that he had not stabbed anyone.

We also reject the state's argument that the evidence was admissible to impeach defendant's testimony in order to correct a "misperception" that "defendant had not used his knife in a violent manner in the past." In the state's view, a misperception arose through a combination

of defendant's testimony that he had never stabbed anyone before and defense counsel's opening statement that defendant did not have the "problems" that Johnson did with violent felony convictions and that defendant carried the knife only for protection. The state relies on a number of cases for that argument, including *Smith*, 86 Or App at 246, and *Grey*, 175 Or App at 249. We are not persuaded by the state's argument that defendant's initial testimony on cross-examination was so broad in scope that it referred to any nonviolent use of a knife.

On cross-examination, defendant testified that "I never have either," after the prosecutor volunteered that "I've never stabbed someone, no."[2] Defendant's testimony was as to a precise fact—that he never had stabbed someone before the incident with Johnson. That precise statement of fact is only susceptible to impeachment by contradiction with evidence that contradicts that same precise fact, that is, only by evidence that showed defendant had stabbed someone before. *See State v. Rood*, 118 Or App 480, 486, 848 P2d 128, *rev den*, 317 Or 272 (1993) (upholding exclusion of impeachment evidence offered by defendant because, "[t]o be used for impeachment, a contradictory statement must be 'reasonably precise' and not merely a 'recitation of opinion and character'" (quoting *State v. Hayes*, 117 Or App 202, 205, 843 P2d 948 (1992), *rev den*, 316 Or 528 (1993)); *see also Hayes*, 117 Or App at 205-06 (holding that impeachment by contradiction requires a precise fact statement to which the rebuttal evidence is contradictory because, "[i]f a statement is ambiguous or imprecise, there is a danger that the evidence will seem to contradict something that was not intended"). Defendant did not make a sweeping statement about never having displayed or threatened someone with a knife that the evidence could have impeached. *Cf. State*

---

[2] We note that, because the state elicited the fact statement from defendant on cross-examination, the state also may have been precluded from seeking to impeach the statement on another ground: a party cannot elicit a collateral fact on cross-examination that is beyond the scope of direct examination and then use impeachment by contradiction to introduce extrinsic evidence concerning that collateral fact. *See State v. Johnson*, 277 Or 45, 48-49, 559 P2d 496 (1977) (reversible error to allow impeachment where state asked on cross-examination whether the defendant was a drug dealer so it could impeach the defendant with a prior conversation in which he admitted to being a drug dealer). However, because the issue was not raised by defendant, we do not discuss that point further.

*v. Schober,* 67 Or App 385, 389, 678 P2d 746 (1984) (allowing evidence of prior instances of the defendant drinking to rebut his testimony that "for all practical purposes I do not drink"). The impeachment evidence that the state introduced was not sufficiently precise to contradict the precise factual statement made by defendant.

The cases offered by the state do not persuade us otherwise. For example, in *Smith,* the defendant was charged with driving while suspended on a specific day. 86 Or App at 241. The defendant's son testified that the defendant did not drive his car on the day in question and also testified that he had not seen the defendant ever drive during his suspension. *Id.* at 241-43. We concluded that the trial court did not err in allowing the state to impeach the son with contradictory evidence that the defendant had driven his car the day after the day in question because it contradicted a statement of fact made by the defendant's son. *Id.* at 244. In *Grey,* the defendant was charged with harassment of a police officer. The defendant put on evidence that she had acted in the way she had because she was unfamiliar with American police practices. 175 Or App at 238-39. The state cross-examined the defendant about that claim and impeached her with questions about her two previous arrests. *Id.* at 242. We concluded that the evidence was proper impeachment because it showed that the defendant had prior contacts with American police and, thus, knowledge of police practices. *Id.* at 249-50. In both *Smith* and *Grey,* the impeachment evidence was sufficiently precise to contradict a specific fact statement made by the witness. Here, in contrast, defendant's encounter with the bicyclist did not impeach his factual statement that he had never stabbed someone before; rather, the state sought to contradict an alleged general perception about defendant's character and not his precise factual statement. The trial court erred in permitting the state to question defendant about the incident with the bicyclist because it was not relevant impeachment evidence.

Although we conclude that the trial court erred, we cannot reverse defendant's conviction if that error was harmless. Erroneously admitted evidence is harmless if there is little likelihood that the error affected the jury's verdict. *State v. Davis,* 336 Or 19, 32, 77 P3d 1111 (2003).

In this case, defendant admitted to stabbing Johnson. The issue for the jury to resolve was whether defendant acted in self-defense under ORS 161.209.[3]

Defendant argues that the error likely affected the jury's verdict because the jury could have used the evidence to infer that defendant had a violent temperament and thus also infer that defendant was the initial aggressor and used unreasonable force. The dispositive issue that the jury was required to resolve was not whether defendant was the initial aggressor—it being undisputed that the incident started with Johnson putting defendant in a headlock and hitting him—but whether defendant used "force which [defendant] reasonably believe[d] [was] necessary for the purpose [of self-defense]." ORS 161.209. Given the undisputed evidence that what defendant feared was being hit by Johnson again and that he reacted by stabbing Johnson eight times, including in the back of the legs, the error at issue here had little likelihood of affecting the jury's verdict as to the "reasonable use of force" issue. Accordingly, we affirm.

Affirmed.

---

[3] ORS 161.209 provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."