Submitted August 17; convictions on Counts 1, 2, 4, and 6 reversed and remanded, remanded for resentencing, otherwise affirmed November 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CORNELIUS ANTHONY CUFFY,
*Defendant-Appellant.*

Marion County Circuit Court
19CR30281; A174647

521 P3d 516

Defendant appeals from a judgment of conviction for nine counts of various crimes based on allegations that defendant injured and coerced his domestic partner while they shared the same household. Among other things, defendant argues on appeal that the trial court erroneously admitted evidence of defendant's gang membership and activities in jail based on his opening the door to that evidence during his testimony. *Held*: The disputed evidence was not relevant for the purposes of impeaching defendant, nor were defendant's statements contradictory, specific and sweeping, or precise enough to be rebutted. Accordingly, the state was not entitled to introduce the evidence of defendant's gang membership and activities in jail. The trial court's error in admitting the evidence was not harmless as to Counts 1, 2, 4, and 6, but was harmless as to Count 9.

Convictions on Counts 1, 2, 4, and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

Audrey J. Broyles, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the briefs for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Convictions on Counts 1, 2, 4, and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment of conviction for two counts of misdemeanor fourth-degree assault (Counts 1 and 7), one count of second-degree assault (Count 2), two counts of strangulation (Counts 4 and 10), two counts of coercion (Counts 3 and 6), and one count of felony fourth-degree assault (Count 9).[1] Those charges arise from injuries that the state alleged defendant caused to his domestic partner, K, between 2018 and 2019 while they shared the same household. Defendant first raises four assignments of error on appeal and then two supplemental assignments.

In his first assignment, challenging the denial of his motion for judgment of acquittal on Count 2, defendant argues that the state adduced insufficient evidence that "Timberland boots" are a dangerous weapon under ORS 161.015(1). We summarily reject that assignment without extended discussion, as the evidence was sufficient for a rational factfinder to find beyond a reasonable doubt that the boots were used as a weapon. Defendant's second assignment was unpreserved and does not constitute plain error, so we reject it without discussion. We likewise reject defendant's third assignment without further discussion, because we agree with the state that defendant's testimony that assaulting a woman is not something that he did "regularly" opened the door to the disputed evidence of his assault of a prior romantic partner.

In his fourth assignment, defendant claims that the trial court erred in admitting evidence of defendant's gang membership and activities in jail based on his opening the door to the evidence during his testimony and argues that the evidence was prejudicial only as to Counts 1, 2, 4, 6, and 9. As we discuss below, we agree that the court erred and that the error was prejudicial with respect to Counts 1, 2, 4, and 6, but not as to Count 9.

Finally, we do not reach defendant's two supplemental assignments of error challenging the jury instructions on Counts 1 and 2 because our disposition on Counts 1 and 2 based on the evidentiary error obviates the need to do so.

---

[1] The jury found that Counts 1, 2, 4, 7, 9, and 10 constitute domestic violence.

As a result, we reverse and remand Counts 1, 2, 4, and 6, remand for resentencing as required by ORS 138.257(4)(a)(A), and otherwise affirm.

We write only to address defendant's fourth assignment of error. We summarize the testimony relevant to the trial court's decision to admit the disputed evidence and review the admission of evidence for legal error. *State v. Apodaca*, 291 Or App 268, 269, 420 P3d 670 (2018). "However, in our assessment of whether the erroneous admission of disputed evidence was harmless, we describe and review all pertinent portions of the record, not just those portions most favorable to the state." *State v. Maiden*, 222 Or App 9, 11, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). With those standards in mind, we provide the following background facts, and to the extent we must consider other facts or standards of review, we do so in the analysis of the respective issues.

Defendant and K became romantic partners and shared the same household for several months before the relevant events in this case, which occurred during separate occasions between December 2018 and May 2019.

At trial, K testified to four occasions on which defendant acted violently towards her. In December 2018, defendant "kick[ed]" K in her face "super hard" with "his big Timberland boots," causing K's lips to "bust[]." Defendant also "chucked" K's phone at her, "hit[ting]" her "in the arm so *** hard" that it caused a "big ball and welt" and became "colored." Then, he accompanied K to the hospital to treat the injuries. On a second occasion, in January 2019, defendant used his hands to "push[]" K's "windpipe," so that she was unable to breathe or see. On a third occasion, defendant "grab[bed]" K's phone and her keys and "told" K to "get undressed," to prevent her from leaving the home. On the last occasion, in May 2019, defendant "slammed" K "against the door" in the presence of K's child. For that conduct, defendant was charged with 10 counts, including fourth-degree assault, second-degree assault, strangulation, and coercion.

Defendant called K several times while in jail awaiting trial, attempting to convince her not to testify against him. In one of those calls, he asked K, "[D]id they

grab those boots?" In another he asked, "[D]id you tell them when I kicked you with the boots? Did you tell them that you went to the hospital ***?" After the court issued an order forbidding defendant from calling K, defendant wrote K letters that made references to a gang of which he was a member. Upon defendant's request, the state redacted the gang references before submitting the letters as evidence. Defendant also communicated via jail phone with another woman, A, with whom he had previously been romantically involved. He asked A's help with convincing K not to testify against him. In a separate case that was consolidated with this one for trial, defendant was charged with several counts of tampering with a witness. That case is not part of this appeal, but the evidence related to that case is relevant to the evidentiary issues presented here.

At trial, defendant disputed the first and third incidents of violence. Concerning the December incident, he testified that there were "boots in the house that belonged to either [K's] brother or someone" else. According to defendant, K was injured when she "tripped over the doorway" and "fell" while they "were moving [a Christmas] tree" that "dropped and hit [K's] arm." Defendant denied that his question from jail about whether K told the police about "when" he "kicked" her "with the boots" and that she "went to the hospital" constituted an admission. He explained that it was a question based on his reading of the indictment. He admitted that he "slammed" K "against the door" in May 2019, but denied that her child was present within the meaning of ORS 163.160(3)(a).[2]

Concerning his efforts to convince K not to testify, defendant testified on direct about his phone communication with A:

"[Defense Counsel:]   *** [T]hose conversations, we have multiple counts of tampering with a witness. What was your intention in talking to [A]?

"[Defendant:]   My intention was [to] try to get [K] not to show up or participate with the DA, with the court ***

_____

[2] ORS 163.160(3)(a) provides, in relevant part: "Assault in the fourth degree *** is a Class C felony if the person commits the crime *** in the immediate presence of [] or is witnessed by *** the victim's minor child."

because *** I was scared of my situation[.] I knew I was facing *** serious charges, and I didn't know what else to do.

"[Defense Counsel:]   Well, you're—during those conversations, you're talking, you know, kind of tough, kind of bold in there—

"*****

"[Defendant:]   I was just trying to be a tough guy, jail is not something that you want to show a weakness in, it's not—people get taken advantage of in jail, and so I had to put on a false front, fake a personality."

Before making these statements, defendant made a reference to being raised in a "rough," "dangerous," and "violen[t]" area of Chicago, where there are a lot of gangs.

On cross examination, defendant did not depart from the testimony above. By that point, he had admitted to tampering with a witness and to two counts of fourth-degree assault (Counts 7 and 9). However, he denied the allegations related to Counts 1, 2, 4, and 6. He also denied that K's child witnessed the incident involved in Count 9.

Later, the state sought to introduce evidence of defendant's gang activity, arguing:

"[H]e talked about how *** he's afraid in jail, that it's a tough, dangerous place. There are letters and *** phone calls where he ran *** references that he's a gang chief, that that's how he's been classified, that he is Black Peace Stone, which is a Chicago southside gang primarily, he even writes on the side of a letter Stone run this, makes other comments about how powerful he is in the jail, and even talks about 'I'm in the hole for calling a shot,' meaning having somebody hit. So I believe he's opened the door to that."

Defendant argued that the evidence was irrelevant and unfairly prejudicial. He asserted that he was "not downplaying that he's in a gang" or that he "[came] from a world of violence" and that the "jury [was] not going to give him a fair trial" if the evidence was admitted.

Concluding that defendant had "opened the door" by his testimony about "his conduct in jail or his fear of jail"

and that the evidence was probative and not unduly prejudicial, the court allowed the state to question defendant about his gang activities. The state then elicited testimony from defendant about his membership in a "powerful southside Chicago gang," as indicated by a tattoo on his throat, and that he had written in one of the letters to K, "Even in this jail, my reputation precedes itself," and about his gang activity inside the jail.

The jury instructions included the following limiting instruction: "The state has entered into evidence statements relating to gang activity ***. The statements are admissible only for the context of defendant's statement and should not be considered as evidence of defendant's guilt."

The jury convicted defendant of misdemeanor fourth-degree assault, second-degree assault, strangulation, coercion, and felony fourth-degree assault (respectively Counts 1, 2, 4, 6, and 9 of the indictment). The jury also convicted defendant of tampering with a witness, in addition to other convictions not relevant to defendant's claims before us.

On appeal, defendant makes two arguments. First, he contends that his statements that he was "just trying to be a tough guy" and that he "had to put on a false front" because he did not want to show weakness in jail are neither specific enough nor sweeping enough to warrant the introduction of impeachment evidence of his involvement with a gang. Second, he argues that admitting the disputed evidence was not harmless as to his convictions on Counts 1, 2, 4, 6, and 9. He asserts that, because the case was a credibility contest between K and himself, allowing the state to introduce the disputed evidence was highly prejudicial to his credibility with the jury.

The state argues that the evidence of defendant's association with a gang was relevant to impeach his testimony as to why he tampered with a witness.[3] It insists that defendant's testimony was specific and sweeping enough to

---

[3] The state is referring to evidence that defendant had been labeled a gang chief, claimed to have power even when he was in jail, and had ordered a hit on another inmate.

be rebutted, given that it concerned the charged offenses and why he did what he did and therefore was relevant to the circumstances of the crimes, entitling the state to introduce contrary evidence.

Alternatively, the state argues that any error was harmless, for two reasons. First, it asserts that "the evidence was cumulative of other evidence, some of which was elicited and presented by defendant," and which referred to defendant's admission that, during his upbringing, he was surrounded by gangs and violence. Second, the state asserts that "the evidence was not prejudicial in light of defendant's theory of the case because the defense had [used] the fact that [he] had been in a gang all of his life *** as part of his defense."

In addressing defendant's challenge, we begin by framing our inquiry. First, we must address whether the evidence of defendant's gang membership and activities was relevant to impeach and to rebut his testimony that he was "just trying to be a tough guy" and that he "had to put on a false front [or] fake a personality" because he was "scared of [his] situation." Second, if defendant's testimony did not warrant impeachment, we must address whether the trial court's error in admitting evidence of defendant's association with a gang was harmless.

Concerning the first question, we disagree with the trial court's assessment that defendant's statements were relevant to the jury's assessment of his credibility.

> "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 401. Evidence is relevant "so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Gibson*, 338 Or 560, 569, 113 P3d 423, *cert den*, 546 US 1044 (2005) (quoting *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000)). A "witness may be impeached by evidence that contradicts the witness's testimony on any independently relevant fact,

although the witness cannot be impeached as to merely collateral matters." *Gibson*, 338 Or at 572. However, impeachment by contradiction requires a precise fact statement to which the rebuttal evidence is contradictory. *State v. Hayes*, 117 Or App 202, 205-06, 843 P2d 948 (1992), *rev den*, 316 Or 528 (1993). A "precise statement of fact is only susceptible to impeachment by contradiction with evidence that contradicts that same precise fact." *State v. Stapp*, 266 Or App 625, 630, 338 P3d 772 (2014).

The "state [is] entitled to introduce *** contradictory testimony [that] relate[s] to the circumstances of the crime." *Gibson*, 338 Or at 572. In *Gibson*, the state was entitled to introduce contradictory testimony that the defendant had fired a gun at least once before to impeach the defendant's assertions that he never had fired the murder weapon. *Id.* The *Gibson* court concluded that the evidence was relevant because it "related to the circumstances of the crime and to whether [the] defendant fired the shot that killed [the victim]." *Id.*

Similarly, in *State v. Tiner*, 340 Or 551, 564-65, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007), the state was entitled to introduce evidence of the defendant's gang associations to impeach evidence that he was a "model prisoner" and "was not involved with troublemakers." The *Tiner* court had concluded that the disputed evidence had "some tendency to controvert defendant's evidence of his prior conduct as a prisoner" which had "suggest[ed] that he was not involved with prison gangs." *Id.* at 565.

Here, the specific evidence of defendant's gang associations that the state elicited was not relevant to impeach his testimony as to why he attempted to tamper with witnesses. Evidence of defendant's association with a gang does not increase or decrease the probability that he felt vulnerable in jail. Indeed, that evidence is not of consequence to the determination of whether defendant was trying to be "tough," to whether he had to put up a "false front," or to whether he was "scared of [his] situation," and thus is not relevant to impeach his testimony regarding whether he attempted to tamper with witnesses.

Additionally, defendant's statements were neither contradictory nor specific and sweeping, or precise enough to be rebutted. This case is distinguishable from the situation in *Tiner*, in which the defendant's claim to be a "model prisoner" and "not involved with troublemakers" was contradicted by his involvement with prison gangs. *Id.* at 564-65. Here, evidence of defendant's gang activity does not impeach his testimony regarding how he perceived his situation in jail—his need to be "tough" and put on a "false front." In fact, the state's theory for impeachment of defendant's credibility is based on a false premise that persons associated with gangs have no concerns about their circumstances while in custody. The state's evidence did not establish that necessary fact, either directly or inferentially. As a result, the state was not entitled to introduce the evidence.

Furthermore, even if it had any relevance, the probative value of the evidence was low and outweighed by its prejudicial effect. Defendant made those statements in the context of admitting to the offense in question, which was tampering with a witness. Indeed, the state was accusing defendant of an element that he has ceded, so the disputed evidence has low probative value, while its potential prejudicial effect is high because it is meant to convey to the jury that defendant is a dangerous person. Thus, the state is not entitled to introduce the disputed evidence under *Gibson*.

Accordingly, neither *Tiner* nor *Gibson* supports the state's position. We turn to whether that error was harmless and, as explained below, conclude that it was not harmless to Counts 1, 2, 4, and 6 but was harmless to Count 9.

A trial court's error is harmless if there is "little likelihood that the error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). If we find so, we will not reverse and remand a conviction based on evidentiary error. *Id.*; *see also State v. Schiller-Munneman*, 359 Or 808, 820-21, 377 P3d 554 (2016) (concluding that evidence of text messages that "addressed the only contested issue in the case and were not duplicative of the other evidence" was erroneously admitted and not harmless because it led to the inference that defendant was guilty; because that inference added significant support to the theory that the defendant

was guilty, there was a likelihood that the trial court's error affected the verdict).

Here, we are unpersuaded by the state's arguments that the evidence was cumulative of other evidence and that, because the jury was aware of defendant's upbringing in a "world of violence," any error would have been harmless. The jury's awareness of defendant's upbringing does not help the state. The record shows that the evidence introduced prior to the disputed evidence, including that defendant was "raised [around] a lot of gangs, a lot of violence" does not indicate that he was involved in gangs. Nor does the record show that evidence as cumulative of other evidence.

On the contrary, letting the jury hear the specific evidence could have caused the jury to infer that defendant is a more dangerous person than the jury might have in the absence of that evidence. First, like the evidence in *Schiller-Munneman*, the references to defendant being a gang member, labeled as "a gang chief" of a "powerful gang," added significant, if indirect, support to the state's theory that defendant was trying to hurt, terrorize, and control K. *See id.* at 821. Second, that evidence had the potential to change the jury's impression about the likelihood of defendant's guilt on an improper basis. *See State v. Mayfield*, 302 Or 631, 644, 733 P2d 438 (1987) ("Evidence is prejudicial under OEC 403 if it tempts the jury to decide the case on an improper basis," such as the belief that the defendant is a bad person.). Consequently, the evidence could have affected the jury's assessment of defendant's guilt.

More specifically, analyzing the prejudicial effect of the disputed evidence on each of defendant's convictions that defendant asserts should be reversed, we explain our conclusion as to why that evidence was prejudicial to Counts 1, 2, 4, and 6 but harmless to Count 9. With respect to Counts 1, 2, 4, and 6, the jury decision was largely based on a credibility contest between defendant and K as to whether the events occurred as testified by K. As a result, the jury's decision to give credibility to the state's theory versus defendant's theory in assessing defendant's guilt of each of these counts could have been tainted by the impression caused by the disputed evidence. Ultimately, the trial court's error

was not harmless as to those counts because it potentially affected the outcome of defendant's case by negatively affecting defendant's credibility with the jury.[4]

As for Count 9, we agree with the state that there is little likelihood that the error affected the verdict on that count. Despite defendant's dispute as to whether K's child was present within the meaning of ORS 163.160(3)(a), defendant admitted that he pushed K, and K's child testified about seeing defendant "push[] [K] hard." Thus, it is unlikely that the jury's decision could have been prejudiced by the image of defendant as a gang member in assessing that count.

Convictions on Counts 1, 2, 4, and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[4] The state does not assert that the limiting instruction here was sufficient to remove any prejudice, and we note that the instruction, far from curing the potential prejudice of the evidence, added more confusion. The court instructed the jury that the "statements" relating to gang activity were "admissible only for the context of the defendant's statements and should not be considered as evidence of the defendant's guilt." That instruction does not identify a purpose for the evidence, but rather tells the jury not to convict defendant based solely on "statements" relating to gang activity but to consider those statements only for the "context" of the defendant's other statements. Thus, the instruction neither cured the trial court's error nor mitigated the prejudicial effect of the evidence. *See State v. Turnidge (S059155)*, 359 Or 364, 384, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017) (identifying the purpose of a limiting instruction).