No. 592            November 15, 2023            155

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY EDWARD GONZALES,
*Defendant-Appellant.*

Polk County Circuit Court
19CR24018; A176611

Norman R. Hill, Judge.

Argued and submitted April 26, 2023.

David L. Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of first-degree sexual abuse.[1] ORS 163.427. Defendant contends that the trial court erroneously admitted a Child Protective Services (CPS) report under the OEC 803(6) "business records exception" to the bar against hearsay evidence. Defendant argues that the CPS report did not meet all of the required elements under OEC 803(6). The state concedes that the trial court erred under *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 503 P3d 1233 (2022), which requires the proponent of the business record to establish each of the OEC 803(6) required elements. The state argues, however, that we should affirm because the error was harmless. For the reasons discussed below, we accept the state's concession of error but conclude that the error was not harmless. Accordingly, we reverse and remand for further proceedings.

As a preliminary matter, we accept the state's concession that the trial court erred in admitting the CPS report under the business records exception in OEC 803(6). The state offered into evidence a CPS caseworker's report that included a statement from S, the alleged victim, that S's mother (hereinafter "mother") had previously encouraged S and her siblings to tell people that they were scared in their current living situation with their father.[2] The report also noted that S was not, in fact, scared, suggesting that mother had encouraged the children to lie to obtain custody of the children during a dispute with father.[3] Under *Arrowood Indemnity Co.*, a party seeking to offer evidence under the business record exception must prove that the record it is offering has each of the characteristics listed in OEC 803(6). 369 Or at 224. OEC 803(6) provides, among

---

[1] Defendant was charged with two counts of first-degree sexual abuse. A jury found defendant guilty as charged. The trial court merged the verdicts into a single conviction for first-degree sexual abuse.

[2] As we discuss below, the father is not the defendant here. He is not otherwise involved in this case.

[3] As discussed in more detail below, the report was offered at trial to undermine mother's credibility with respect to her denials that any abuse had occurred and to bolster S's credibility by offering an explanation for her prior denials of abuse.

other requirements, that the business record must have been (1) "made at or near the time" of the acts, events, conditions, opinions, or diagnoses and (2) made "by, or from information transmitted by, a person with knowledge."[4]

The caseworker testified at trial that he recognized the CPS report in question and remembered interviewing S. However, the caseworker was not able to verify when he made the report or even if he submitted the report by the listed due date. The trial court ultimately admitted the report over defendant's objections that the caseworker did not write the report "close in time" to the events described therein, concluding that "since the person writing the report was also the person who observed it, it doesn't have to be close in time." The trial court misstated the law. The fact that the caseworker had personal knowledge of the interview with S did not obviate the state's burden to establish that the caseworker made the report "at or near the time" of the interview. *Arrowood Indemnity Co.*, 369 Or at 224. ("A party seeking to utilize the exception must prove that the record it is proffering has each of those characteristics, and the party must do so through the testimony of the custodian or other qualified witness." (Internal quotation marks omitted.)). We therefore accept the conceded error because there was insufficient evidence at trial to show that the caseworker wrote the report "at or near the time" of the events in question, as required by statute.

Before turning to our consideration of whether the error was harmless, we address the state's argument that defendant's choice in the trial court to reject a limiting instruction should preclude our consideration of the harm

---

[4] OEC 803(6) provides:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

that defendant raises on appeal. After overruling defendant's objection to the hearsay evidence, the trial court offered to instruct the jury that the statement in the CPS report should not be considered for its truth, but only as "circumstantial evidence of state of mind of the child." Ultimately, defendant decided not to accept that proposed limiting instruction. On appeal, the state contends, without citing any authority, that because defendant declined to accept that limiting instruction, defendant should be precluded on appeal from arguing that the admission of the CPS report was not harmless. We have rejected a similar argument in the past. *See Deerfield Commodities, Ltd. v. Nerco, Inc.*, 72 Or App 305, 325 n 15, 696 P2d 1096, *rev den*, 299 Or 314 (1985) (concluding that a party's failure to request a limiting instruction in a civil trial did not waive that party's right to appeal the admissibility of the underlying evidence). Here, defendant argued to the trial court that the CPS report was inadmissible *in its entirety*. That defendant did not accept the more limited relief offered by the trial court—a limiting instruction on a particular statement within the report—does not preclude defendant from contending that the trial court erred in the first instance by admitting the report. It also does not preclude defendant from arguing that the error was not harmless when considered by the jury.[5] Furthermore, the state has not identified any case law that would exempt us from our duty to consider whether the error was harmless. *See State v. Davis*, 336 Or 19, 27, 77 P3d 1111 (2003) ("'[H]armless error' is a shorthand reference to a legal standard * * * that the Oregon Constitution requires this court to apply after determining in an appeal or on review that a trial court has erred.").

We turn to whether the error was harmless, beginning with the facts and procedural history of the case. When determining whether the trial court's erroneous admission of evidence was harmless, "we describe and review all pertinent portions of the record, not just those portions most favorable to the state." *State v. Cuffy*, 322 Or App 642, 644, 521 P3d 516 (2022) (internal quotation marks omitted).

---

[5] In appropriate circumstances, we may factor a party's decision to reject a limiting instruction into our harmless error analysis, but in this circumstance, we decline to do so.

S was an 11-year-old girl at the time of trial. S testified that in 2013, when she was around four years old, defendant, her uncle, would come into her room at night, carry her to her parents' bedroom, and touch her "private parts." During these encounters with defendant, S stated that she would pretend to be asleep. On one occasion, S recalled screaming for mother when defendant placed his genitals on S's face. S told a caseworker that mother saw defendant committing the sexual act, threatened to call the police, and forbade defendant from returning to the house. Mother, however, contradicted S, testifying that she never walked in on a sexual act happening between defendant (her brother) and S.

In the following years, CPS caseworkers interviewed S several times in unrelated matters. In 2015, following up on allegations of neglect, a CPS caseworker asked S whether she had been sexually abused. S denied any sexual abuse. In July 2017, following up on more unrelated allegations, another CPS caseworker asked S whether she had been sexually abused. S again denied any sexual abuse. Only in August 2017, during another CPS interview, did S disclose to CPS that she had been sexually abused by defendant. In the ensuing investigation, defendant made inconsistent and plainly untrue statements during police interrogations. Notably, at the beginning of the investigation, defendant denied even knowing S, his niece.

Despite challenges to defendant's credibility, S's credibility remained the central issue in the case. Mother undermined S's credibility when she contradicted S and expressly denied ever walking in on defendant performing sexual acts with S. S's credibility was also potentially called into question by S's delayed or inconsistent reporting of the sexual abuse. To bolster S's credibility, and diminish trust in mother, the state introduced the business record at issue in this case—the report from the July 2017 CPS interview. At the time of the July 2017 CPS interview, mother was engaged in a custody dispute with the father of her children, including S. According to the report, S stated to the caseworker that mother instructed her and her siblings "to tell people that [they were] scared because Mom [wanted

them] to stay with her." S told the caseworker that she was not scared in her current living situation.

An error is harmless if there is "little likelihood that the particular error affected the verdict." *Davis*, 336 Or at 32. We have held that when the credibility of a witness is at issue, and improperly admitted evidence may have "colored the jury's consideration" of that issue, "we cannot conclude that there is little likelihood that the admission of the improper * * * evidence affected the verdict." *State v. Ferguson*, 247 Or App 747, 755, 271 P3d 150 (2012) (concluding impermissible vouching for sexual abuse victim not harmless when credibility of victim was in question). This is especially true when the credibility of the witness is the central issue in the case. *State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003) (concluding that when "swearing contest" was the central issue in sexual abuse case, erroneously admitted expert testimony related to delayed reporting was not harmless).

During the trial, defendant argued that S's inconsistent reporting and prior denials of any sexual abuse by defendant undermined her credibility. Much like the testimony in *Ferguson*, the statement from the erroneously admitted CPS report was probative of that issue. It provided a logical explanation for S's inconsistency in reporting: mother may have instructed her to lie to CPS caseworkers about the abuse. Furthermore, S's statements from the CPS report undermined mother's credibility because those statements suggest that mother may have been willing to lie to authorities. As in *Marrington*, the lack of physical evidence in this case reduced the jury trial to a "swearing contest" between S and defendant. But here, mother "stood in" for defendant by testifying to his version of events and rejecting S's version. Therefore, a challenge to mother's credibility—such as S's statements from the CPS report—necessarily weighed on the jury's consideration of the "swearing contest" between S and defendant.[6] For those reasons, the

---

[6] We acknowledge that both *Ferguson* (vouching testimony) and *Marrington* (expert evidence) involved particularly damaging evidence that had been improperly admitted and was clearly not harmless. However, the same harmless-error principles apply here when the improperly admitted evidence at issue goes to a significant credibility issue in the case.

statements from the CPS report likely colored the jury's consideration of S's credibility—the central issue in this case. Accordingly, we cannot conclude that there is little likelihood that the erroneously admitted CPS report affected the verdict.

Reversed and remanded.