898 December 18, 2024 No. 915

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ANGEL ANZO, JR.,
*Defendant-Appellant.*

Washington County Circuit Court
21CR20071; A179378

Erik M. Bucher, Judge.

Argued and submitted September 24, 2024.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Armstrong, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals from convictions after a jury trial of first-degree sexual abuse, ORS 163.427, and attempted first-degree rape, ORS 163.375, arising from his sexual abuse of his girlfriend's then ten-year-old daughter, D, raising eight assignments of error. The first four assignments of error relate to the trial court's exclusion of evidence defendant offered to impeach the victim's mother, Romayor. The fifth through eighth assignments assert that the trial court committed plain error in not *sua sponte* declaring a mistrial at several points during the prosecutor's closing argument based on improper burden shifting and vouching. We conclude that the trial court did not err and therefore affirm.

We summarize the relevant facts: Police in Portland initially investigated defendant in 2017, after D reported to a school counselor that defendant, who was living in the family home, had sexually abused her after bribing her with favors. D and Romayor had an initial evaluation with CARES Northwest (CARES), in which D did not really participate. At Romayor's request, defendant moved out of the home. Police dropped the investigation after D told Romayor that defendant's actions had been a dream or a nightmare.[1]

To have a fresh start, the family moved from Portland to Vancouver, Washington, and defendant moved back into the home. Several months later, D ran away from home, leaving a note for Romayor that defendant had resumed abusing her. When D returned, she disclosed to a forensic interviewer in Washington that defendant had abused her in both Oregon and Washington, and defendant was charged. Defendant denied abusing D.

Pretrial, the parties engaged in a discussion with the court concerning Romayor's statements to CARES in 2017 that she had concerns that D had lied in the past and that she disbelieved D's allegations. Defense counsel explained that he did not plan to go into detail but wanted to ask Romayor her opinion of D's general credibility in 2017. The trial court agreed that defendant could ask Romayor

---

[1] In an interview with police, D said that she "realized" it was a dream after Romayor had told her, "Please, let it be a dream."

her opinion of D's general credibility in 2017 but ruled that defendant could not ask about specific statements Romayor had made to CARES about D's behaviors.

D testified at trial and described the abuse in detail. She explained that she had recanted her initial disclosures in 2017 when she realized that Romayor was sad without defendant in the home.

Romayor testified that, after the family moved to Vancouver and defendant returned to the house, she noticed troubling behaviors in D. Romayor testified that D could not fall asleep and would wander the house at night; that D would skip school and ran away many times, necessitating frequent police involvement, and that D began cutting herself.

On cross-examination, defense counsel asked Romayor whether D had had behavior problems before defendant came into their lives, and Romayor said "no."[2] Defendant then sought to impeach that testimony with statements Romayor had made to CARES in 2017, in which she described D's behavioral issues at that time. Defendant argued that the evidence was relevant to rebut the implication of Romayor's testimony that D had developed behavioral issues only after the alleged abuse. Defendant's counsel described several behaviors that Romayor had described to CARES that he wanted to inquire about: mood swings; anger; aggression; causing problems with Romayor's partners; and lying. Defendant asserted that the evidence would show that the current behavioral issues described by Romayor were not new but merely a continuation.

The trial court was not persuaded. The court adhered to its ruling that defendant could ask Romayor only general questions about whether she had reported behavioral

---

[2] At trial, on cross-examination, defense counsel asked Romayor:

"Prior to [defendant] in 2017—and I'm just going to be talking in general without giving specifics—but prior to [defendant]—that's the timeframe in 2017 before he's a part of your life—there were behavioral issues with [D]."

Romayor answered, "No." Defense counsel asked, "There weren't any?" And Romayor repeated, "No." Defense counsel then sought to cross-examine Romayor by asking about the specific behavioral issues that Romayor had described to CARES in 2017.

problems to CARES in 2017 but could not ask about specific behaviors. Thus, defense counsel asked Romayor if she could remember describing behavioral issues to CARES in 2017; Romayor answered that she could not remember.

On appeal, in his first assignment of error, defendant contends that the trial court erred in excluding the proposed cross-examination of Romayor for specific behavior problems that Romayor had identified to CARES in 2017, because the evidence would have countered the inference from Romayor's testimony at trial that D's concerning behaviors began only after the move to Vancouver and defendant's return to the house.[3]

The state responds that the trial court did not err, because the record shows that the proposed cross-examination would not have presented a "contradiction," as that term has been understood in the caselaw. As the state notes, "impeachment by contradiction requires a precise fact statement to which the rebuttal evidence is contradictory." *State v. Cuffy*, 322 Or App 642, 649, 521 P23d 516 (2022). Thus, impeachment by contradiction must be based on evidence that contradicts the same precise fact. *State v. Stapp*, 266 Or App 625, 630, 338 P3d 772 (2014).

We have reviewed the record and agree with the trial court that the proposed impeachment would not have presented contradictory evidence. That is because the behavioral issues that Romayor described in her testimony at trial (inability to sleep; self-cutting; skipping school; running away from home) were different from and more intense than the behavioral issues that Romayor identified to CARES in 2017 (lying; mood swings; anger; aggression; causing problems with Romayor's partners). Defense counsel was permitted to ask Romayor whether, generally, she had described behavioral issues to CARES, and could also have cross-examined her generally about having had concerns about D's behaviors in 2017, but we conclude that the behavioral issues that Romayor had described to CARES in 2017 did not contradict Romayor's testimony at trial. Thus, the trial court did not err in denying cross-examination based

---

[3] Defendant argued that he was only offering the evidence to impeach Romayor and not "for the purposes of showing [the victim's] behavior itself."

on those specific behavioral issues. We therefore reject the first assignment.

In the alternative, in his second through fourth assignments of error, defendant contends that trial court erred in disallowing cross-examination of Romayor based on the specifics of Romayor's prior statements to CARES, because the impeachment was permissible under OEC 613[4] to show that Romayor's testimony was inconsistent with statements she had previously made to CARES. The state responds that the prior statements were properly excluded under OEC 613, because the rule has been interpreted to require that, when impeachment based on a prior inconsistent statement is offered, there must be a "material" variance between the prior inconsistent statement and the testimony of the witness at trial. *State v. Shearer*, 101 Or App 543, 546, 792 P2d 1215, *rev den*, 310 Or 205 (1990) (citing *Rigelman v. Gilligan*, 265 Or 109, 121, 506 P2d 710 (1973)). The determination whether a variance is "material" is within the discretion of the trial court. *Id*. In the state's view, although Romayor testified that D had not had any behavioral issues before defendant joined the family but had in fact described some behavioral issues to CARES that predated her relationship with defendant, the trial court did not abuse its discretion in determining that the inconsistencies between Romayor's testimony at trial and her statements to CARES were not "material."

We agree with the state that the trial court's ruling does not constitute an abuse of discretion. We note that the trial court did allow inquiry into whether Romayor had identified behavioral concerns generally, and also allowed defendant to present evidence of the behavioral questions on the CARES intake form. But the trial court disallowed cross-examination of Romayor on the specific behaviors she

---

[4] OEC 613 describes impeachment by prior inconsistent statements:

"(1) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(2) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

had identified in 2017. In rejecting defendant's request to cross-examine Romayor on those behaviors in more detail, the trial court simply reasoned that it was not persuaded that there was an inconsistency between Romayor's prior descriptions of behavioral issues to CARES and her testimony at trial, because the described behaviors were different. We conclude based on our review of the record that the trial court's ruling did not constitute an abuse of discretion.

In his fifth through eighth assignments of error, defendant makes arguments under *State v. Chitwood*, 370 Or 305, 311–12, 518 P3d 903 (2022), identifying comments that the prosecutor made in closing argument or rebuttal that defendant contends were improper either as vouching for the victim, burden shifting, or suggesting to the jury that it could decide the case based on sympathy for the victim. In defendant's view, those comments, either individually or collectively, rise to the level of plain error, because they denied defendant a fair trial.

To consider unpreserved error as plain error, we must determine that the asserted error (1) is an error of law, (2) that is obvious and not reasonably in dispute, (3) and that appears on the face of the record. *Chitwood*, 370 Or at 311. We have considered each of the comments that defendant contends constituted burden shifting or vouching in the context in which they were made.[5] If any of the comments were improper, we conclude that they could have been corrected

_____

[5] The prosecutor argued:

"And what did we not hear? If you call someone a liar, you'd better have a good reason. And let's be honest, that is what is being said here, because this either happened or it didn't. And that means that [D] is either lying or she's not. And you have not heard any shred of evidence or information why she would say these things if they didn't happen. Nothing."

The prosecutor argued that the jury had

"not heard about any reason that [D] has any axe to grind with this guy. It is too much to accept. It is unreasonable to accept that this is anything but the cold hard truth of [D's] childhood."

And in rebuttal, the prosecutor argued:

"You have heard a lot of words, but you have not heard anything that contradicts or calls into question except for a denial, I didn't do this. You haven't heard anything else that would suggest that the credibility of [D] and of [Romayor] is problematic."

The above comments, in defendant's view, suggested that defendant bore a burden to disprove the victim's credibility.

with an appropriate jury instruction; thus, we conclude that they do not give rise to plain error.

Finally, defendant challenges as improper the prosecutor's comments in closing argument commending the victim's decision to testify:

"Imagine being 10 or 13 or 15 years old. Everything is embarrassing. Your body, your family, sex. Everything is embarrassing. And what did she have to go through? And what did she know she was going to have to go through at because she had to do it at 10? The girl who could barely talk knew what was coming, as she disclosed.

"She had to talk about the most intimate, embarrassing things on video with strangers, with an evaluator, a detective. *She had to come in here and tell her story in front of all of you and get asked questions by a man she doesn't know who's trying to, at best, make her look crazy, at worst, make her look like a liar. And she has to do that all in front of the guy that did it to her.*"

(Emphasis added.) Defendant asserts that the italicized comments were improper, because they encouraged the jury to decide the case based on sympathy for the victim or to punish defendant and his counsel for having forced the victim to testify in the exercise of defendant's right to present a defense.

Although we do not condone comments that denigrate a defendant or counsel for choosing to present a defense, we need not decide whether the prosecutor's remarks were legally impermissible. That is because, even assuming that the remarks were improper, we conclude that, in the context in which they were made and the record as a whole, any error was harmless. That is, there is little likelihood that the comments affected the verdict. Consequently, we conclude that they therefore provide no basis for reversal under plain-error review.

Affirmed.